| |
|---|
| **A Participations Ltd. v Velissaris** |
| 2026 NY Slip Op 30684(U) |
| February 24, 2026 |
| Supreme Court, New York County |
| Docket Number: Index No. 652720/2023 |
| Judge: Melissa A. Crane |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| **PRESENT:**    <u>HON. MELISSA A. CRANE</u> | **PART**               **60M** |
| *Justice* | |

-------------------------------------------------------------------------------X

| | |
|---|---|
| | **INDEX NO.**      <u>652720/2023</u> |
| | **MOTION DATE**    <u>N/A</u> |
| | **MOTION SEQ. NO.**   <u>031</u> |

A PARTICIPATIONS LTD., AMITELL MASTER FUND, AQUIS CAPITAL AG, AUGESCO HOLDINGS, CARL FRIEDRICH MARINO GUMPERT, CRESCENDO CAPITAL SA, DAIWA HOUSE INDUSTRY PENSION FUND, FRANCOIS DEKKER, GIOVE S.R.L., JAMES T. SHERWIN, JAPAN MEDICAL SUPPORT CO., LTD, KATSUSHI NAKAYAMA, KIYOKAZU KANNO, KEIKO KANNO, LIGHTVC, LTD., MAXYM ENTIN, MONTSOL ANSTALT, MUFG ALTERNATIVE FUND SERVICES (CAYMAN) LIMITED REF  EQUATOR INVESTMENTS LIMITED, OPUS CHARTERED ISSUANCE S.A. COMPARTMENT 127, REINBERGER FOUNDATION, SHADOWBOLTS LIMITED, STEINFREUND57 S.A., SICAV-RAIF - GLOBAL HEDGEFUNDS, TEXAS TECH UNIVERSITY SYSTEM, TOTUS HOLDINGS, 2010 REVOCABLE GST GARY L. PILGRIM, ABRAHAM JOSHUA HESCHEL SCHOOL, AEJ CAPITAL, LLC,ANDREW SCHWERIN, BONNIE SCHWERIN, ATLAS GLOBAL FUND, BELMONTI FAMILY REVOCABLE TRUST & MARGARET M. BELMONTI REVOCABLE TRUST HELD AS TENANTS IN COMMON, BRIAN N. KAUFMAN REVOCABLE TRUST U/T/A 02/13/13, BRITTON FUND, BYRON S. KRANTZ REVOCABLE TRUST, CAROL A. BUEKER REVOCABLE TRUST U/A 12/12/95, MELDRUM FAMILY, LLC,COBALT ABSOLUTE, LLC,DAVID A. COHEN DECLARATION OF TRUST, DAVID A. HORN TR UW FBO CAROLYN, DAVID A. HORN TR UW FBO HELEN, DAVID N. SCAIFE 2020 REVOCABLE TRUST, DRAKE LEONARD II LLC,DJI 2006 FUND, EARL H. DEVANNY, III REVOCABLE TRUST U/A DTD 4/2/2001, ELLIOT SIGAL, RUTH SIGAL, FFI 2011 FUND, FLINT HILLS DIVERSIFIED STRATEGIES, LP, FRANK C. SULLIVAN II DECLARATION OF TRUST, FRANK H. PORTER JR. DECLARATION OF TRUST, GARY L. PILGRIM 2010 IRREVOCABLE TRUST, GARY L. PILGRIM 2013 DELAWARE TRUST, GARY L. PILGRIM GST TR U/D 6/4/98, GO4G BEST IDEAS, LLC,GOHEELS, LLC,GREENLEAF TRUST, HARVEY L. KAPLAN TRUST, HUMMEL PARTNERS LP, IRENE B. NEWMAN REVOCABLE TRUST, IRIS ABSOLUTE, LLC,JASON M. KUHN REVOCABLE TRUST, JEFFREY BELMONTI REVOCABLE TRUST, JOHN D. STARR REVOCABLE TRUST U/A DTD 11/10/93, JOHN R. GRISSINGER LIVING TRUST U/A 4/7/11, KAPLAN 2020 FUND, KENDOR II LLC,KEVIN M. ANDERSON 2017 UPN IRREVOCABLE TRUST U/A DTD 3/21/2017, LAUREN N. RAINEN, LIBERTY SPECIAL STRATEGIES FUND LLC,MARIE GENSHAFT, MARGARET J. ANDERSON REVOCABLE

**DECISION + ORDER ON MOTION**

652720/2023   A PARTICIPATIONS LTD. ET AL vs. INFINITY Q CAPITAL MANAGEMENT LLC ET AL
Motion No.  031

Page 1 of 14

[* 1]

TRUST U/A DTD 7/22/1999, MARK DAVID 1994
PERSONAL IRREVOCABLE TRUST, MARK H
SONNENBERG, SUSAN L SONNENBERG, MATTHEW N.
KRISER REVOCABLE TRUST, MCSR MASTER FUND,
L.P., MICHAEL J. HAGAN, MICHAEL J. RAINEN
REVOCABLE TRUST U/A/ DTD 5/4/1990, MICHAEL J.
SELVERIAN, NEIL GENSHAFT REVOCABLE TRUST,
PAUL L. GOLDBERG DECLARATION OF TRUST, PFLP
INVESTMENTS, LLC,RICHARD B. KLEIN REVOCABLE
TRUST U/A/DTD 6/8/1993, REVOCABLE TRUSTY
AGREEMENT OF JULIETTE B. FREEMAN, REGE S.
EISAMAN, ROBERT A. BERNSTEIN REVOCABLE TRUST
U/A DTD 7/8/1997, AS AMENDED, RUTH E. PILGRIM
REV. GST TR 9/22/10, SECOND AMENDED AND
RESTATED AGREEMENT OF TRUST FOR LAWRENCE S.
CONNOR DATED MAY 2, 2016, SECULAR GROWTH
INVESTORS, LP, SIGAL FAMILY INVESTMENTS,
LLC,SIMBA INVESTMENTS, LLC,SNYDER RESOURCE
MANAGEMENT L.P., STATE TEACHERS RETIREMENT
SYSTEM OF OHIO, STEVEN B. SHAFFER TRUST U/A
8/25/2003, THE 2009 JOHN N. MCCONNELL III GIFT
TRUST, THE 2020 MARK FISHMAN TRUST PREVIOUSLY
THE 2009 MARK FISHMAN TRUST, THE LEONARD G.
HERRING FAMILY FOUNDATION, INC.,THOMAS E.
LAUERMAN REVOCABLE TRUST U/A DTD 10/30/2000,
AS AMENDED, TUTERA GROUP, INC.,VIOLET A.
CARSON RESTATED 2004 REVOCABLE TRUST,
VERGER CAPITAL FUND, LLC,WA ABSOLUTE RETURN
HEDGE FUND LLC,WALLIS ANNENBERG LIVING TRUST,
WEINERG FAMILY LP,

Plaintiff,

- v -

JAMES VELISSARIS, INFINITY Q CAPITAL
MANAGEMENT LLC,SCOTT LINDELL, LEONARD
POTTER, INFINITY Q MANAGEMENT EQUITY,
LLC,WILDCAT PARTNER HOLDINGS, LP, WILDCAT
CAPITAL MANAGEMENT, LLC,EISNERAMPER LLP,
EISNERAMPER US (CAYMAN) LTD., U.S. BANCORP
FUND SERVICES LLC,U.S. BANCORP FUND SERVICES,
LTD.,

Defendant.

-------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 031) 444, 445, 446, 447, 448, 449, 467, 468, 469, 503, 540

were read on this motion to/for                                       DISMISS                                       .

652720/2023   A PARTICIPATIONS LTD. ET AL vs. INFINITY Q CAPITAL MANAGEMENT LLC ET AL          Page 2 of 14
Motion No.  031

2 of 14

In motion sequence no. 031, defendant Infinity Q Capital Management LLC (IQCM) moves, pursuant to CPLR 3211 (a) (3) & (7) and 3016 (b) to dismiss plaintiffs' second amended complaint (the SAC). For the reasons set forth below, the motion is granted and the SAC is dismissed against IQCM.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For a full recitation of the facts and the relevant procedural history in this action, the court refers to its prior decisions and orders, in particular the decision and order for motion 30, with which familiarity is presumed. Additional facts are drawn from the SAC unless noted otherwise and are assumed to be true for purposes of this motion.

Briefly, this action arises out of the collapse of Infinity Q Volatility Alpha Fund (the Hedge Fund), that was comprised of Infinity Q Volatility Alpha Fund, L.P., a master fund organized as a Delaware limited partnership, and Infinity Q Volatility Alpha Offshore Fund, Ltd., a feeder fund organized as a Cayman Islands exempt company (NY St Cts Elec Filing [NYSCEF] Doc No. 368, SAC at 1 n 1; NYSCEF Doc No. 428, Karam affirmation, exhibit E at 1).

Defendants James Velissaris (Velissaris) and Leonard Potter (Potter) co-founded defendant IQCM, the Hedge Fund's general partner and investment advisor responsible for its day-to-day management (SAC, ¶¶ 130 and 134-135). Defendant Infinity Q Management Equity, LLC (IQME) and BFLP, nonparty David Bonderman's (Bonderman) family partnership, own 60% and 40%, respectively, of IQCM (*id*., ¶¶ 131-132 and 142). Velissaris and defendant Scott Lindell (Lindell), together, own IQME (*id*., ¶ 131). Velissaris served as IQCM's Chief Investment Officer (CIO) and had been employed by Wildcat as a portfolio manager from "2012 through at least 2018" (*id*., ¶¶ 134 and 140). Lindell acted as IQCM's Chief Risk Officer, Chief

[* 3]

Compliance Officer, and Head of Portfolio Services while simultaneously serving as Wildcat's Head of Risk Management (*id*., ¶ 136). Potter acted as IQCM's Chief Executive Officer while simultaneously serving as Wildcat's President and CIO (*id*., ¶¶ 13 and 135). Defendants U.S. Bancorp Fund Services, Ltd. and U.S. Bancorp Fund Services LLC (together, USB) served as the Hedge Fund's administrator charged with calculating the Hedge Fund's net asset value (NAV) and preparing monthly account statements for investors (*id*., ¶¶ 7, 138 and 214). Defendants EisnerAmper, LLP and EisnerAmper US (Cayman) Ltd. (together, EisnerAmper) acted as the Hedge Fund's outside auditor and issued Form K-1 tax statements to investors (*id*., ¶¶ 9 and 137).

The Hedge Fund invested in the same over-the-counter (OTC Derivatives) strategies as the Infinity Q Diversified Alpha Fund (the Mutual Fund), a pooled investment vehicle that IQCM had launched three years earlier (*id*., ¶¶ 143 and 146). IQCM categorized the majority of the Hedge Fund's OTC Derivatives as Level 3 assets (*id*., ¶ 151). "Level 3 assets have no observable inputs (e.g., market prices or models), may require some measure of estimation based on management assumptions, and are valued based on the best available information" (*id*.). According to IQCM's due diligence questionnaire, "[t]he primary source of pricing information typically will be independent sources, such as brokers or pricing services, but Infinity Q's Valuation Committee is ultimately responsible for determining fair value for investments held by each client" (NYSCEF Doc No. 453, Crossland affirmation, exhibit A at 7; SAC, ¶ 154).

After conducting pre-investment due diligence on the Hedge Fund and IQCM, plaintiffs executed subscription agreements with the Hedge Fund and collectively invested more than $380 million dollars between July 2018 and February 2021 (SAC, ¶¶ 1, 14 and 30-129).

652720/2023   A PARTICIPATIONS LTD. ET AL vs. INFINITY Q CAPITAL MANAGEMENT LLC ET AL

Motion No. 031
Page 4 of 14

4 of 14

[* 4]

The Hedge Fund collapsed in February 2021 after the Securities and Exchange Commission (SEC) discovered that Velissaris had been manipulating and inflating the value of the Hedge Fund's OTC Derivatives, thereby inflating the Hedge Fund's overall value (*id*., ¶¶ 4-5, 177 and at 4 n 3). Velissaris pled guilty to securities fraud and was sentenced to 15 years in prison (*id*., ¶¶ 188 and 190; *United States v Velissaris*, 2023 WL2875487, *1 and 11, 2023 US Dist LEXIS 62740, *1 and 30 [SD NY, Apr. 10, 2023, No. 22crl05 (DLC)], affd 2024 WL4502201, 2024 US App LEXIS 26034 [2d Cir, Oct. 16, 2024]). IQCM, BFLP, and Lindell entered into separate consent judgments with the SEC[1] (SAC, ¶¶ 191-192). Three class actions related to IQCM's collapse brought in Supreme Court, New York County, and the United States District Court for the Southern District of New York have settled[2] (*id*. at 44 n 11).

Plaintiffs subsequently commenced this action seeking "to recover the difference between the amount that each Plaintiff overpaid for their limited partnership interests in the Hedge Fund as of the date of their investments due to IQCM's overvaluations, as well as damages for payment of taxes on illusory income" (*id*., ¶ 14). As against IQCM, the SAC pleads fraud/fraudulent inducement as a nineteenth cause of action.

IQCM now moves to dismiss the SAC. Plaintiffs oppose.

## DISCUSSION

"On a motion to dismiss for failure to state a claim under CPLR 3211 (a) (7), the Court affords the pleading 'a liberal construction' and must 'accept the facts as alleged ... as true, accord [the nonmoving party] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory'" (*Taxi Tours Inc. v Go N.Y*

---

[1] The SEC did not allege a mismarking fraud against Lindell, and Lindell made "no admissions in connection with" his settlement with the SEC (NYSCEF Doc No. 565 at 153-156).

[2] Plaintiffs opted out of the class action settlement reached in *Matter of Infinity Q Diversified Alpha Fund Sec. Litig.*, Sup Ct, NY County, index No. 651295/2021.

**652720/2023 A PARTICIPATIONS LTD. ET AL vs. INFINITY Q CAPITAL MANAGEMENT LLC ET AL** **Page 5 of 14**
**Motion No. 031**

5 of 14

[* 5]

*Tours, Inc.*, 41 NY3d 991, 993 [2024] [internal citation omitted]; see also *Guggenheimer v Ginzburg*, 43 NY2d268, 275 [1977] ["the sole criterion is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law"]).

A. Standing - Direct vs. Derivative

IQCM first moves to dismiss the SAC on the ground that plaintiffs lack standing to sue because their claims are derivative (*see* NYSCEF Doc No. 445 at 2-16). On a pre-answer motion to dismiss brought under CPLR 3211 (a) (3), the defendant bears the burden of demonstrating that the plaintiff lacks standing to sue (*Homelink Intl., Inc. v Law Offs. of Sanjay Chaubey*, - AD3d -, 2025 NY Slip Op. 05460, *1 [1st Dept 2025]). The court has already considered and rejected this argument in the decision that disposed of the motion brought by BFLP, Wildcat and Potter (*see* NYSCEF Doc No. 567, Decision and Order resolving MS #030, same index number). Because plaintiffs' fraud claim is direct by nature, rather than derivative, the court denies so much of IQCM's motion to dismiss the nineteenth cause of action in the SAC for lack of standing (*see* NYSCEF Doc No. 567, Decision and Order resolving MS #030, same index number).

B. Fraud/Fraudulent Inducement

IQCM next moves to dismiss the SAC on the ground that it fails to state a claim for fraud/fraudulent inducement. A cause of action for fraud requires the plaintiff to plead "a misrepresentation or a material omission of fact which was false and known to be false by [the] defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury" (*Pasternack v Laboratory Corp. of Am. Holdings*, 27 NY3d817, 827 [2016] [internal quotation marks and

652720/2023 A PARTICIPATIONS LTD. ET AL vs. INFINITY Q CAPITAL MANAGEMENT LLC ET AL Page 6 of 14

Motion No. 031

6 of 14

[* 6]

citations omitted]; *Underwood v Urban Homesteading Assistance (U-HAB), Inc.*, 191 AD3d550, 551 [1st Dept 2021] [discussing fraudulent inducement]). Because a cause of action for fraud must be pled with particularity (CPLR 3016 [b]), the complaint must contain "specific facts with respect to the time, place, or manner of this purported misrepresentation" (*CMB Export Infrastructure Inv. Group 48, LP v Motcomb Estates, Ltd.*, 223 AD3d513, 514 [1st Dept 2024]; *Orange Orch. Props. LLCv Gentry Unlimited, Inc.*, 191 AD3d609, 609 [1st Dept 2021] [same]; *Hamrick v Schain Leifer Guralnick*, 146 AD3d606, 607 [1st Dept 2017] [same]). Statements made upon information and belief are insufficient (*see Facebook, Inc. v DLA Piper LLP (US)*, 134 AD3d610, 615 [1st Dept 2015], lv denied 28 NY3d903 [2016]). That said, a plaintiff need not present "unassailable proof of fraud" so long as "the facts are sufficient to permit a reasonable inference of the alleged conduct" (*Pludeman v Northern Leasing Sys., Inc.*, 10 NY3d486, 492 [2008]). In addition, "[i]n actions for fraud, corporate officers and directors maybe held individually liable if they participated in or had knowledge of the fraud, even if they did not stand to gain personally" (*Polonetsky v Better Homes Depot, Inc.*, 97 NY2d46, 55 [2001]).

Here, IQCM raises the same three objections to plaintiffs' fraud/fraudulent inducement claim against it that co-defendant Scott Lindell (Lindell) raised in his own motion to dismiss plaintiffs' fraud/fraudulent inducement claim against him (SAC cause of action ten; *see* NYSCEF Doc No 406, ¶¶ 598-605). These include the arguments that: (1) the SAC fails to comply with the heightened pleading standard in CPLR 3016 (b) as it fails to identify the specific misrepresentations that IQCM officers are alleged to have made or to specify the times, places and manner in which they are alleged to have made them but, instead sets forth impermissible "group pleading" allegations; (2) the SAC fails to adequately plead scienter; and (3) plaintiffs

652720/2023   A PARTICIPATIONS LTD. ET AL vs. INFINITY Q CAPITAL MANAGEMENT LLC ET   Page 7 of 14
AL
Motion No.  031

7 of 14

disclaimed any reliance on alleged misrepresentations contained in certain "offering documents" in the subscription agreement they executed with IQCM. The court passed on those arguments in its decision disposing of Lindell's dismissal motion (*see* NYSCEF Doc No 568, MS #029) and reiterates its findings here.

Firstly, plaintiffs have not pled facts implicating IQCM's participation in the purported fraudulent scheme with the requisite particularity that CPLR 3016 (b) requires. The SAC fails to plead the particular misrepresentations IQCM's officers allegedly made about the Hedge Fund's performance, governance, connection with Wildcat, assets, and Level 3 Valuation Procedures. Contrary to plaintiffs' contention, plaintiffs should be in possession of those facts and therefore, they could have included those details in the SAC.

With the exception of two plaintiffs (Mark H. Sonnenberg and Susan L. Sonnenberg), the 102 plaintiffs or their advisors,[3] generally, allege that they held telephone calls, conferences and in-person meetings and had written exchanges with IQCM "personnel," including (without differentiation) Lindell, Velissaris, Potter, Shawn Rowatt (Rowatt), and Scott Griffith (both IQCM investor relations managers; SAC, ¶¶ 396, 409, 413, 417, 421, 424, 428, 432, 436, 440, 444, 448, 451-452, 456, 460, 462, 466-467, 471, 475, 478, 481, 486, 490-491, 495, 499, 503, 506 and 508). Eighty-six plaintiffs allege that IQCM "represented," "corroborated," "always represented" or "always described that the marketing materials depicted the Hedge Fund's valuation procedures (*id*., ¶¶ 409, 413, 417, 424, 436, 440, 444, 451, 456, 460, 466, 471, 475, 481, 486, 490 and 499). Absent from the SAC, however, are any specific misrepresentation attributed to these IQCM officers or any particular details as to when, how and to whom they might have made them (*see CMB Export Infrastructure Inv. Group 48*, LP, 223 AD3d at 514

---

[3] Several plaintiffs had retained advisors in connection with their investments in the Hedge Fund (SAC, ¶¶ 412, 416, 427, 431, 435, 439, 443, 455, 459, 465, 477, 494, 498 and 502).

**652720/2023  A PARTICIPATIONS LTD. ET AL vs. INFINITY Q CAPITAL MANAGEMENT LLC ET AL**                    **Page 8 of 14**

**Motion No. 031**

8 of 14

[* 8]

[dismissing fraudulent inducement claim where the "[p]laintiff ... did not allege any specific facts with respect to the time, place, or manner of this purported misrepresentation"]; *INTL FCStone Mkts., LLC v Corrib Oil Co. Ltd.*, 172 AD3d492, 493 [1st Dept 2019] ["[t]he allegations supporting the fraud claims also lack particularity, as, with minimal exceptions, they fail to identify who made the misrepresentations, when the misrepresentations were made, and the substance of the misrepresentations"]; *Gregor v Rossi*, 120 AD3d447, 447 [1st Dept 2014] [dismissing fraud and fraudulent inducement claims where "the words used by defendants and the date of the alleged false representations are not set forth" in the complaint] ; *Hamrick*, 146 AD3d at 607, citing *Eastman Kodak Co. v Roopak Enters*., 202 AD2d220, 222 [1st Dept 1994] ["[t]he complaint does not allege who made the misrepresentations or when or where they were made"]). This alone is a sufficient ground upon which to dismiss the instant fraud claim.

In addition, however, IQCM is also correct to assert that "group pleading" in fraud claims is impermissible (*see Principia Partners LLC v Swap Fin. Group, LLC*, 194 AD3d 584, 584 [1st Dept 2021] [failure to distinguish between defendants is improper group pleading]; *RKA Film Fin., LLC v Kavanaugh*, 171 AD3d 678, 678 [1st Dept 2019] [dismissing fraud claim where plaintiffs "impermissibly lumped those defendants together with the others against whom specific acts had been pleaded"]), and that IQCM cannot be held liable for statements made by undifferentiated "personnel" to plaintiffs. As the court noted elsewhere, the SAC generally describes the fraud claim as including a "years-long ... scheme" in which "Velissaris ... fraudulently manipulat[ed] asset values," and a "central component [of this scheme] was to claim that IQCM played no role in the valuation of the Hedge Fund's exotic OTC Derivatives," that resulted in a more than $1 billion overvaluation of the Mutual Fund and Hedge Fund (*see* NYSCEF Doc No 567 at 23-24, citing SAC, ¶¶ 4 and 183-184). However, the controlling

652720/2023   A PARTICIPATIONS LTD. ET AL vs. INFINITY Q CAPITAL MANAGEMENT LLC ET AL          Page 9 of 14

Motion No.  031

9 of 14

[* 9]

caselaw makes it clear that Velissaris's guilty plea to securities fraud may not be broadly imputed to all other IQCM "personnel" as well. Because the SAC fails to identify IQCM officers, to impute discrete fraudulent statements to them and/or to allege the time, place and manner in which they made those statements, the court deems that the nineteenth cause of action therein is an impermissible "group pleading" that does not withstand scrutiny under CPLR 3016 (b).

IQCM's second dismissal argument concerns the "scienter" element of a fraud claim that, under New York law, may be adequately pled "by 'alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness'" (*In re Longtop Fin. Tech. Ltd. Sec. Litig.*, 910 F Supp2d 561, 574 [SD NY 2012] [citations omitted]).[4] "To successfully allege scienter based on motive and opportunity, a plaintiff must plausibly plead that the defendant 'benefitted in some concrete and personal way from the purported fraud'" (*Mangrove Partners Master Fund, Ltd. v Bristol-Myers Squibb Co.*, 2025 WL 1420914, *4 [2d Cir, May 16, 2025] [citation omitted]). Here, IQCM argues that the allegation in the SAC that money motivated Lindell because IQME (in which he was a 15% owner) would benefit from the monthly management and annual performance fees IQCM collected from the Hedge Fund is insufficient as a matter of law. Caselaw holds that "an allegation that defendants were motivated by a desire to maintain or increase ... compensation is insufficient because such a desire can be imputed to all corporate officers" (*Kalnit v Eichler*, 264 F3d 131, 139 [2d Cir 2001]; *see also Mangrove Partners Master Fund, Ltd*, 2025 WL1420914, *4 [desire for corporation to appear profitable not sufficient motive]; *Saraf v Ebix, Inc.*, 2024 WL1298426, *2, 2024 US App LEXIS 7208 [2d Cir, Mar. 27,

---

[4] *In re Longtop Fin. Tech. Ltd. Sec. Litig.* concerns a private claim for fraud brought under the Securities Exchange Act of 1934 (910 F Supp2d at 566).

**652720/2023   A PARTICIPATIONS LTD. ET AL vs. INFINITY Q CAPITAL MANAGEMENT LLC ET AL**        **Page 10 of 14**
**Motion No.  031**

[* 10]

2024] [avoiding bankruptcy not enough to plead motive and opportunity]; *SSRII, LLC v John Hancock Life Ins. Co. (U.S.A.)*, 37 Misc 3d 1204[A], 2012 NY Slip Op. 51880[U], *5 [Sup Ct, NY County 2012] [same]). Artificially inflating the price of shares and then selling shares for personal profit can be sufficient to plead motive and opportunity (*see Novak v Kasaks*, 216 F 3d 300, 308 [2d Cir 2000], cert denied 531 US1012 [2000]). Here, however, the SAC alleges that IQME *failed* to sell its interests in IQCM (SAC, ¶ 167). Thus, plaintiffs have failed to plead how any of IQCM's officers stood to receive a concrete and personal "benefit" (*see Nandkumar v AstraZeneca PLC*, 2023 WL3477164, *3 [2d Cir 2023]).  As noted, failure to adequately plead the element of "scienter" mandates the dismissal of a fraud claim.

Finally, with respect to IQCM's "disclaimer" argument, New York law has long recognized that a general merger clause coupled with a provision specifically disclaiming reliance on extra-contractual representations can defeat a claim sounding in fraud (*see Citibank v Plapinger*, 66 NY2d90, 94 [1985], rearg denied 67 NY2d647 [1986]). In such instances, however, dismissal is only warranted where "(1) the disclaimer is made sufficiently specific to the particular type of fact misrepresented or undisclosed; and (2) the alleged misrepresentations or omissions did not concern facts peculiarly within the seller's knowledge" (*Basis Yield Alpha Fund (Master) v Goldman Sachs Group, Inc.*, 115 AD3d 128, 137 [1st Dept 2014]). Here, section 3.01(v) in the subscription agreement states that "[n]o representations or warranties have been made to the Subscriber by the Fund or Infinity Q, or any of their partners, officers, employees, agents, affiliates or subsidiaries, other than the representations of the Fund in this Agreement and the Partnership Agreement/Articles[5]" (NYSCEF Doc No. 428 at 3.01 (v)). This language is not

---

[5] "Agreement" means the subscription agreement (NYSCEF Doc No. 428 at 1). "Partnership Agreement" means the "Agreement of Limited Partnership of the Partnership," and "Articles" means the "Articles of Association of the [Infinity Q Volatility Alpha Offshore Fund, Ltd.]" (*id.*). "Fund" means either Infinity Q Volatility Alpha Fund, L.P. and Infinity Q Volatility Alpha Offshore Fund, Ltd. (*id*. at 2).

**652720/2023   A PARTICIPATIONS LTD. ET AL vs. INFINITY Q CAPITAL MANAGEMENT LLC ET AL**          **Page 11 of 14**

**Motion No.  031**

11 of 14

sufficiently specific to foreclose a fraud claim based on the alleged misrepresentations that IQCM adhered to the valuation policies and procedures the Hedge Fund's "offering documents" and/or other marketing materials (*see Loreley Fin. (Jersey) No. 3 Ltd. v Citigroup Global Mkts. Inc.*, 119 AD3d136, 144 [1st Dept 2014] [finding that the "disclaimers and disclosures fall well short of tracking the particular misrepresentations and omissions alleged by plaintiffs"] ; *Silver Oak Capital L.L.C. v UBSAG*, 82 AD3d666, 667 [1st Dept 2011] [disclaimer in private placement memorandum not sufficiently specific as to the particular misrepresentation at issue]). Consequently, IQCM's argument that plaintiffs disclaimed any reliance on his pre-investment statements is unpersuasive and the court rejects it.

Nevertheless, the SAC's nineteenth cause of action against IQCM for fraud/fraudulent inducement is dismissed for the reasons discussed above.

## C. Fiduciary Duty

IQCM next argues that the SAC should be dismissed on the ground that "the complaint does not plead breach of fiduciary duty" against it (NYSCEF Doc No. 445 at 17-18). Plaintiffs respond that they "do not assert a breach of fiduciary duty claim against IQCM; they assert a fraud claim," and that "a fiduciary duty is not required for a fraud claim" (NYSCEF Doc No. 467 at 22).

IQCM appears to have abandoned its argument to dismiss breach of fiduciary duty because its reply papers do not mention fiduciary duty further (NYSCEF Doc No. 540). Indeed, the operative complaint asserts just one claim against IQCM, the nineteenth cause of action for fraud. In any case, IQCM's argument is irrelevant to plaintiffs' fraud claim (*see e.g. Goldin v TAG Virgin Is., Inc.*, 149 AD3d 467, 468 [1st Dept 2017], citing *Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 179 [2011] [a plaintiff asserting a cause of action for <u>fraudulent</u>

652720/2023   A PARTICIPATIONS LTD. ET AL vs. INFINITY Q CAPITAL MANAGEMENT LLC ET AL            Page 12 of 14
Motion No.  031

12 of 14

concealment must plead the existence of a fiduciary duty, but this element is <u>not required</u> to assert a cause of action for <u>fraud</u>]). Therefore, the court rejects it.

D. Group Pleading

IQCM next moves to dismiss the SAC on the ground that it "allege[s] that IQCM made affirmative misrepresentations to [plaintiffs] or their investment advisors in calls, emails and/or in person meetings," but that it "fail[s] to allege with specificity the nature of any misrepresentation made in such meetings, the identity of the person who made the misrepresentation, the actual knowledge of the unidentified speakers, or any legal or factual basis for imputation of such fraudulent intent to IQCM" (NYSCEF Doc No. 445 at 18-20). IQCM asserts that this type of "group pleading" violates the specificity requirement set forth in CPLR 3016 (b) (*id.*). The court previously addressed the CPLR 3016 (b) specificity argument in section B of this decision, *supra*.

E. Extrinsic Representations

IQCM finally moves to dismiss the SAC on the ground that "[t]o the extent plaintiffs' claim is premised on the alleged valuation process misstatements in the "offering documents," that theory is precluded by plaintiffs' contractual agreement that they did not rely on those misstatements" (NYSCEF Doc No. 445 at 20). The court likewise addressed this argument in section B of this decision, *supra*.

Accordingly, it is

ORDERED that the motion, pursuant to CPLR 3211 and 3016 (b), brought by defendant Infinity Q Capital Management LLC to dismiss the second amended complaint (motion sequence no. 031) is granted, and the second amended complaint is dismissed as against this defendant,

652720/2023  A PARTICIPATIONS LTD. ET AL vs. INFINITY Q CAPITAL MANAGEMENT LLC ET AL
Motion No.  031

Page 13 of 14

with costs and disbursements as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly in favor of said defendant; and it is further

ORDERED that the action is severed and continued against the remaining defendants; and it is further

ORDERED that counsel for the moving party shall serve a copy of this order with notice of entry upon the Clerk of the Court and the Clerk of the General Clerk's Office within ten days of the e-filed date of this decision and order; and it is further

ORDERED that such service upon the Clerk of the Court and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible at the "E-Filing" page on the court's website).

20260224151538MACRANE18592007C21B4C48B1ECF433A261177B

| 2/24/2026 | | | | | |
|---|---|---|---|---|---|
| **DATE** | | | | **MELISSA A. CRANE, J.S.C.** | |
| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

652720/2023   A PARTICIPATIONS LTD. ET AL vs. INFINITY Q CAPITAL MANAGEMENT LLC ET AL
Motion No.  031

Page 14 of 14

14 of 14

[* 14]